### HALLER BAKING CO v. WARD BAKING CO.

(District Court, W. D. Pennsylvania.   October 9, 1923.)

### No. 870.

1. **Trade-marks and trade-names and unfair competition** ⬌59(5)—"Vitovim" held not an infringement of "Vim" as a trade-mark for bread.
     The registration and use of the word "Vitovim," as a trade-mark for bread, *held* not an infringement of a prior trade-mark, "Vim."
2. **Trade-marks and trade-names and unfair competition** ⬌57—Similarity of suggestion does not establish infringement.
     That two trade-marks suggest similar qualities in the product is not sufficient to establish infringement.
3. **Trade-marks and trade-names and unfair competition** ⬌70(1)—Evidence held not to establish unfair competition.
     Where the loaves of bread made by complainant and defendant were of different size and shape, and put up in different wrappers, each bearing the name of the maker in large letters, the use by defendant in its advertising of slogans and jingles somewhat similar to those used by complainant, and by others as well, *held* not to establish unfair competition, especially where defendant and its predecessors had been in business in the city of complainant for 70 years, had a far wider reputation, and had extended its business and advertising to most of the larger cities in

---

⬌For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the eastern part of the United States, while complainant's business was local.

**4. Trade-marks and trade-names and unfair competition ⊜⇒93(3)—Evidence held not to show probability of deception of public.**

Evidence *held* insufficient to show that the public had been, or were likely to be, deceived by the acts of defendant alleged to constitute unfair competition.

In Equity. Suit by the Haller Baking Company against the Ward Baking Company. Bill dismissed.

Clarke & Doolittle, of Pittsburgh, Pa. (Chas. M. Clarke and Wm. H. Parmelee, both of Pittsburgh, Pa., of counsel), for plaintiff.

R. T. M. McCready, of Pittsburgh, Pa., and W. B. Morton and George J. Hesselman, both of New York City, for defendant.

GIBSON, District Judge. The plaintiff has filed its bill to restrain the defendant from the use of the trade-mark "Vitovim" in connection with bread, and from alleged unfair competition in connection therewith. The facts, as we find them from the testimony introduced, are as follows:

The Haller Baking Company, the plaintiff, has been operating a bakery in Pittsburgh since March 1, 1915. On September 14, 1917, it registered the word "Vim" as a trade-mark for bread, and from that time, and prior thereto, has sold what it has advertised as a whole wheat loaf under the name "Vim" bread. This "Vim" bread has not actually been a whole wheat loaf, but contained about 70 per cent. of whole wheat flour. This proportion was adopted for ease in baking and to make the bread more palatable. The plaintiff has also sold a bread which is called "Raisin Vim" during a part of the period last mentioned. It has advertised these "Vim" breads to a considerable extent in the city of Pittsburgh and vicinity. Plaintiff has marketed this bread in a small, corrugated, cylindrical loaf, each loaf wrapped in a single sheet of waxed paper, with the name of the Haller Baking Company printed prominently thereon, with other printed matter and designs, in the center of the sheet. The inside of the loaf, in texture and color, resembles the ordinary loaf of brown bread. This bread, as well as other breads made by plaintiff, has not been sold to the public through grocers or shopkeepers, but has been sold directly to consumers from plaintiff's wagons or over its counter in its own bakery. Plaintiff's wagons, and some of its advertisements bear the inscription "From Oven to Home."

The Ward Baking Company, the defendant, either as corporation or partnership, has carried on a baking business in the city of Pittsburgh for more than 50 years. From a small beginning it has grown until it now has bakeries in most of the large cities in the eastern half of the United States. Within recent years it has put upon the market a number of different breads, under numerous trade-names, such as "Ward's Aunt Hannah's Bread" and "Ward's Tip-Top Bread." For a number of years it has extensively advertised its products. It obtained a certificate of trade-mark registration for the word "Vitovim" on January 9, 1923, for a certain bread which it had put on the market

in the latter part of the year 1922. It began selling this bread in the city of Boston on the date stated, and has continued to extensively advertise and sell it to the present time. This "Vitovim" bread is of different shape and larger than plaintiff's "Vim" loaf, and both outside and inside looks like the ordinary white bread. It is wrapped in a strip wrapper; that is, in a wrapping machine which is fed from a continuous roll. The design is printed continuously on the strip. The words, "Ward's Vitovim Bread" appear several times on each wrapper. In color and design printed thereon the wrapper closely resembles other wrappers used by the defendant for a very considerable time before the "Vim" bread of the plaintiff was sold. It does not closely resemble plaintiff's wrapper. Defendant's evidence, which is uncontradicted, is to the effect that this bread is the result of a great expenditure of money and a great deal of investigation.

[1, 2] The plaintiff alleges, in substance, that defendant has willfully adopted a trade-mark in simulation of plaintiff's mark, and has also knowingly imitated plaintiff's advertising of its bread, and that, by such means and extensive advertising, it is confusing the public and causing plaintiff's trade-mark to lose its significance and value. We are of the opinion that defendant has not infringed plaintiff's mark "Vim" by the registration and use of its own mark, "Vitovim." Regarding each as a word coined merely to identify the respective maker's product, we are unable to conceive that the public, even the careless part of it, could or would be deceived by bread marked only by the word "Vitovim," if "Vim" bread were desired. Written or spoken, the words are not so similar as to be confounded. But, it is urged, the prefix of defendant's mark, "Vito," although perhaps actually meaningless, conveys the same suggestion as plaintiff's word, "Vim," and therefore the two trade-marks present the same idea, and, used in connection with the same article, necessarily lead to confusion. But mere similarity in suggestion is not sufficient to make one mark an infringement upon the other, provided the words are dissimilar. "Energia bread," e. g., would convey the same suggestion as "Vim" bread, but certainly would not infringe the latter mark.

[3] As stated, we are of the opinion that defendant's mere use of "Vitovim" to identify its bread does not in itself infringe upon plaintiff's trade-mark. It is our duty to inquire further, however, and to determine whether plaintiff's allegation of unfair competition on the part of the defendant is sustained by the evidence. This charge, as we understand it, is based on the claim that defendant's advertising was knowingly copied from plaintiff's, and is designed and intended to create the impression that "Vitovim bread" was the same as, or a successor to "Vim bread." This advertising, on billboards, on loaf, wrappers, and in newspapers, was not entirely free from any resemblance to plaintiff's, or to that of a hundred other bakers. By various means, among them the use of various jingles and slogans, both parties sought to convey to the public that their respective products were healthful and nutritious, and were rich in iron, vitamines, and the like.

The first baker who sold his products to his fellow men advertised his product, in his own particular way, as healthful, nutritious, and

palatable, and every baker since has done the same thing. The plaintiff is certainly not entitled to object to the defendant, or any other baker, doing it. It is claimed, however, that the Haller Baking Company was a pioneer in advertising its bread as containing vitamines. This may be admitted without in any manner affecting our inquiry. Even so, it has no right to prevent defendant from advertising its bread as containing vitamines, if such be the case. Plaintiff did not invent vitamines, has no patent upon them, and is entitled to no monopoly in the mention of them in connection with bread.

It is further urged by plaintiff's counsel, however, that defendant's advertising of vitamines, in conjunction with the fact that it also used certain jingles, in which, for example, the word "trim" was made to rhyme with the word "Vitovim" (plaintiff having used similar jingles in connection with the word "Vim"), is strong proof of its contention that defendant knowingly and willfully imitated plaintiff's trade-mark and advertising. The foundation of this claim seems very fragile to one who remembers the exploitation of vitamines in connection with a certain brand of yeast in magazine advertisements beginning four or five years ago, or who recalls one "Sunny Jim," who figured in advertisements of a breakfast food in which the main features were couplets that rhymed the word "Jim" with other words ending in "im." It is temerity in a food manufacturer to claim any originality in advertising that his product contains vitamines; and, if not original, how can he assert that the fountain from which he drew his idea was not open to his rival in trade? As to the jingles, they are only less obvious than they are inane.

The evidence makes it plain, as we think, that defendant was not guilty of any conscious imitation of plaintiff's advertising. For a considerable period before it placed its "Vitovim" bread on the market it had a corps of chemists and experts at work in an attempt to make a bread which should contain all the vitamines necessary to the nutrition of the human body. Long and careful experiments were made in feeding rats and other animals, until finally success was attained, it is claimed. "Vitovim" bread was the culmination of this labor, the evidence shows, and in such case it cannot well be claimed that the advertisement of the vitamine feature was merely an imitation of plaintiff.

Perhaps the most conclusive evidence that defendant was not trying to induce the public to buy its goods in the belief that it was getting those of plaintiff is to be found in that testimony which relates to the preparation of the two breads for market. It plainly shows that plaintiff's loaf was in a differently shaped wrapper, and was of a different shape and color, than defendant's loaf. Each company had its name printed in large type on the wrapper. In view of the fact that the Ward Baking Company, or its predecessors, always under the Ward name, had conducted bakeries in the city of Pittsburgh for about 70 years, and at the time of the alleged infringement was operating large bakeries in practically all of the large cities in the eastern half of the United States, it would seem to be a forlorn hope that it should induce the public to believe that its product was that of the plaintiff when it had its name on the wrapper and in its advertisements. It

would seem exceedingly strange that it should try to do so, since its own reputation was far wider, not to say better, than that of the plaintiff.

[4] There was no testimony offered which went to show that the public had been deceived by the alleged similarity in trade-marks, or by any other means. Plaintiff did offer certain testimony which, it claimed, tended to show the possibility of confusion between the two marks. It produced certain of its agents, who had gone to grocery stores and had asked for "Vim" bread, or "Vim bread—the bread that is advertised so much." In some instances the grocer sold them Vito-vim bread. Under any circumstances, this testimony would be of very little value in establishing deceit of the public; but in the present case it is entirely without weight. It will be remembered that the plaintiff sold directly to the consumer, while the defendant sold only to dealers. The breads were not in actual, direct competition with each other. An honest grocer, who had never handled "Vim" bread and was ignorant of its existence, might well offer the bread he did handle in the thought that the purchaser had inaccurately stated its name. Almost any deal-er, asked for that which he had not, would offer that which he had, in the hope that the customer might be indifferent, despite the request for the particular article, and would accept the substitute. But the action of dealers is not the test. The question is: Could an actual purchaser, knowing and desirous of buying plaintiff's bread, and us-ing ordinary care, possibly be deceived by the trade-mark of the defendant or its advertisements?

In our judgment, the trade-mark used by defendant is not sufficient in itself to induce the public to buy its bread as that of the plaintiff; nor do we find that defendant has attempted by any other means to foist its wares upon the public as those of the plaintiff; nor does any evidence indicate that the public has been, or might be, deceived by the alleged similarity of trade-marks, or otherwise.

Plaintiff's bill will be dismissed.